PHYLLIS GINSBERG, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; PHILIP GINSBERG, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Ginsberg v. Commissioner
Docket Nos. 7130-80, 14027-80.[1]
United States Tax Court
T.C. Memo 1981-483; 1981 Tax Ct. Memo LEXIS 261; 42 T.C.M. (CCH) 975; T.C.M. (RIA) 81483; September 2, 1981. Phyllis Ginsberg, pro se in docket No. 7130-80. Philip Ginsberg, pro se in docket No. 14027-80. Iris K. Rothman, for the respondent. TANNENWALD
MEMORANDUM FINDINGS OF FACT AND OPINION TANNENWALD, Chief Judge: Respondent determined the following income tax deficiencies: Petitioner
Taxable Year
Amount
Phyllis Ginsberg
1976
$ 456.54
Philip Ginsberg
1976
$ 311.42
The issues to be decided are (1) whether petitioner Phyllis Ginsberg (Ms. Ginsberg) or petitioner Philip Ginsberg (Mr. Ginsberg) is entitled to dependency exemptions for their two children, and *263 (2) whether Ms. Ginsberg is entitled to use "head of household" taxation rates. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Each petitioner timely filed a Federal income tax return for the year in dispute, and they separately resided in Brooklyn, New York, at the time they filed their petitions with this Court. Petitioners were married in 1958, but they separated and maintained separate residences sometime around July 15, 1971. On May 5, 1972, the Family Court, Court of Kings, State of New York, ordered Mr. Ginsberg to pay $ 58 per week to Ms. Ginsberg as support for their two children. [2]
During the taxable year in dispute, Mr. Ginsberg paid a total of $ 3255.76 for the support of the children as follows: (1) $ 2580 court ordered support; (2) $ 300 in support of the children when they visited with him during the year; and (3) $ 563.64 for health insurance covering himself and his children, of which $ 375.76 is allocable to the children. Both children resided with Ms. Ginsberg during the taxable year in her two-bedroom apartment. Because of flood *264 damage, Ms. Ginsberg recarpeted both bedrooms at a cost of $ 327.98. She also paid the following household expenses: Rent
$ 2400.00
Fire Insurance
19.00
Gas
57.51
Electricity
315.48
Telephone
193.71
Purchases at Dial Drugs [3]
196.00
Food
3169.40
$ 6351.10
During the taxable year in controversy, Ms. Ginsberg made the following payments for expenses of her children inuring equally to the benefit of each child: Medical
$ 239.00
School Snacks
114.00
Entertainment
277.60
Transportation
50.00
Tax
[4] 90.00
$ 770.60
During this year, Ms. Ginsberg also spent $ 344.92 on clothes for her son, $ 487.93 on clothes for her daughter, and $ 145.00 on a pool club membership for her daughter. OPINION The first issue which we must decide is whether Ms. Ginsberg or Mr. Binsberg is entitled to dependency *265 exemptions for their two children. Section 151(e)(1)(B) [5] permits a taxpayer to claim a dependency exemption for each dependent who is a child of the taxpayer and is under the age of 19. As a general rule, a child is a dependent of the taxpayer if the taxpayer furnishes more than one-half of the child's support. Section 152(a). However, special rules apply to children of parents who are divorced, legally separated under a decree of divorce or separate maintenance, or separated under a written separation agreement. Section 152(e). If those special rules apply to the instant case, they will require, because Mr. Ginsberg is the noncustodial parent and provided more than $ 1200 per child in support, that Ms. Ginsberg "clearly establish" that she provided more for the children's support than did Mr. Ginsberg. See section 152(e)(2). If these rules do not apply, then the burden of proof is upon each petitioner to show that he or she provided more than half of the children's support. See section 152(a); Rule 142(a). *266 We need not decide whether petitioners' living arrangements and support order constitute a "legal[] separat[ion] under a decree * * * of separate maintenance, or * * * [a separation] under a written separation agreement," see section 152(e)(1)(A), because we have found that Ms. Ginsberg clearly established that she provided more than half of her daughter's support and that Mr. Ginsberg has proven that he supplied more than half of his son's support. Mr. Ginsberg's total support payments for the year in issue were $ 3255.76, of which half (or $ 1627.88) is allocable to each child. For the reasons set forth below, we hold that Ms. Ginsberg is entitled to treat $ 1856.20 as support for her daughter and $ 1568.19 as support for her son. The parties have agreed that Ms. Ginsberg may treat 2/3 of the household expenses (see p.3 supra) as properly apportioned to the children. Thus $ 4234.06 total, or $ 2117.03 per child, is properly treated as support paid by her. However, the expense of $ 327.98 for carpenting was plainly a capital expense, and so Ms. Ginsberg may not treat as support the full amount paid by her in the taxable year of acquisition, but rather she is limited *267 to the children's portion of one year's wear and tear. [6] Taking 10 years as the useful life of household carpeting, compare Rev. Proc. 77-10, 1977-1 C.B. 548, sec. 3-00.11; Otis v. Commissioner, 73 T.C. 671, 674 (1980), we hold that Ms. Ginsberg may treat 2/3 [6] of $ 32.80, or $ 21.87 ($ 10.94 per child) as support. From the above, we hold that Ms. Ginsberg paid the following in support of her children-- Daughter
Son
$ 2117.03
$ 2117.03
10.94
10.94
385.30
385.30
487.93
344.92
145.00
$ 3146.20
$ 2858.19
In order to determine which petitioner contributed more support for each child, we must subtract from Ms. Ginsberg's totals the amount of Mr. Ginsberg's support paid to Ms. Ginsberg. Allocating half of Mr. Ginsberg's *268 court ordered support to each child, we compute Ms. Ginsberg's personal support was $ 3146.20 less $ 1290 or $ 1856.20 for her daughter, and $ 2858.19 less $ 1290 or $ 1568.19 for her son. Dividing Mr. Ginsberg's total support of $ 3255.76 in half, he expended $ 1627.88 per child during the taxable year as support. Thus he spent more than Ms. Ginsberg in support of their son but less than her in support of their daughter. [7]
The second issue which we must decide is whether Ms. Ginsberg is entitled to "head of household" filing status. See generally section 2(b). Respondent concedes that the only prerequisite to that status in dispute is whether Ms. Ginsberg was "unmarried" within the meaning of section 143. Moreover, he concedes that if Ms. Ginsberg is entitled to a dependency exemption for either child, she must be treated as "unmarried" pursuant to section 143(b). Because we have held that Ms. Ginsberg is entitled a dependency exemption for her daughter, we also hold that *269 she is entitled to "head of household" filing status. Decisions will be entered under Rule 155. Footnotes
1. These cases were consolidated for trial, briefing, and opinion.↩
2. Petitioners' son was born in 1961, and their daughter was born in 1963.↩
3. The parties have stipulated that these unidentified expenses are properly treated, to the extent allocable to the children, as support.↩
4. Ms. Ginsberg estimated this amount to be $ 200, but she incorrectly assumed that foodstuffs are subject to New York state sales tax. We have accounted for that error in our finding.↩
5. All section references are to the Internal Revenue Code, as amended and in effect during the year in issue. Any reference to Rules shall de deemed to refer to the Tax Court Rules of Practice and Procedure.↩
6. See Sheldon v. Commissioner, T.C. Memo 1969-170↩. 6. The parties generally have stipulated to a per capita allocation. Because Ms. Ginsberg shared one of the two bedrooms with her daughter, she is arguable entitled to allocate 3/4 of the carpet wear and tear to the children. Because of our disposition of this case, we need not decide between the 2/3 and 3/4 allocation possibilities.↩
7. Neither of the petitioners nor respondent has suggested that either child received support from a third party, and therefore we assume that all of the children's support came from their parents.↩